### VELLEMAN v. ROHRIG et al.

(Supreme Court, Appellate Division, First Department. July 8, 1908.)

1. MORTGAGES—CONSTRUCTION—PRIORITY—FORECLOSURE—RIGHT TO SURPLUS.

S. held two mortgages, each for $10,000, on one parcel of defendant's land, to secure an indebtedness of $20,000. He also held a mortgage for $10,000 on another tract of defendant's land, to secure him "for any indebtedness which now exists or may hereafter exist" on defendant's

part to him. Subsequently an agreement was entered into among S., defendant, certain of defendant's creditors, and others, by which S. was to make certain payments to. the creditors, to secure which defendant executed to him a third mortgage on the first tract for $40,000. A mortgage on both tracts was made at the same time to trustees for $85,000; the agreement providing that the latter mortgage should be subsequent and subordinate to all advances made by S. under his $40,000 mortgage. S. subsequently foreclosed his three mortgages on the first tract. The first two were satisfied, and part of the third. A prior mortgage on the other tract was foreclosed, and there was a surplus of $9,000, which S. sought to obtain under his $10,000 mortgage on the premises, and the trustees claimed it under the $85,000 trust mortgage. *Held* that, the trust mortgage being "subordinate to all advances made or that may thereafter be made" on S.'s mortgage, S. was entitled to the surplus.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 35, Mortgages, § 1637.]

2. COMPOSITIONS WITH CREDITORS—CONSTRUCTION.

K. & Co. had a mechanic's lien for $4,607, and the balance due it as a whole for materials furnished was $16,135. An agreement was made for the settlement of the creditors' claims, partly in cash and partly in certificates of trustees under a trust mortgage. The creditors agreed to cancel all their liens against the premises or owner, and to file no further notices of liens, and not to commence any proceeding on any claim within one year, except that K. & Co. was not to satisfy its lien for $4,607; it being agreed, however, that it would not proceed to enforce it for one year, and would at any time prior thereto satisfy the lien on receipt of $2.000. *Held*, that the meaning of the agreement was that, whereas the other creditors were to cancel their liens at once on the strength of the cash payment and shares in the trust mortgage, K. & Co. was not to satisfy its lien until it had actually received $2,000, and a bonus of that amount, in addition to the lien, was not contemplated.

Houghton, J., dissenting.

Appeal from Order Entered on Report of Referee.

Action by Joshua Velleman against William H. Rohrig and others to foreclose a mortgage. In surplus money proceedings, Samuel Strasbourger, the Monona Company, and others were claimants. From an order confirming the report of a referee therein, the Monona Company and others appeal. Affirmed.

Argued before INGRAHAM, McLAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

Frank M. Avery, for appellants.

Austen G. Fox, for respondent.

McLAUGHLIN, J. This is an appeal from an order confirming the report of a referee in proceedings for the distribution of surplus moneys arising on the foreclosure of a mortgage on real estate. In order to properly consider the questions presented by the appeal a statement of the following facts seems to be necessary:

In October, 1905, the defendant Rohrig was the owner of two parcels of real estate in the city of New York—one at Park avenue and Ninety-Sixth street, and the other at Madison avenue and Ninety-Sixth street. Upon the former was a completed, and upon the latter an uncompleted, apartment house. There were a number of mortgages upon each of these parcels, but it is necessary to refer only to those involved in this appeal. Upon the Madison avenue property the respondent Strasbourger held two mortgages for $10,000 each, both given in May, 1905.

On the 23d of October, 1905, Rohrig, being financially embarrassed, entered into an agreement with his creditors (certain provisions of which will be hereafter considered), pursuant to which he executed another mortgage to Strasbourger for $40,000 to cover advances which the latter agreed ,to make to insure the completion of the Madison avenue apartment house. This mortgage was dated and recorded the 27th of November, 1905, and it appears that Strasbourger made the first advance of $1,000 on that day. He subsequently foreclosed these three mortgages on the Madison avenue property, and the same was sold. There was then found to be due him over $64,000, and he received from the proceeds of the sale $31,401.39, leaving a deficiency of $33,286.73, for which a deficiency judgment was entered. At the time the agreement above referred to was made Strasbourger also held a mortgage on the Park avenue property for $10,000, recorded on the 25th of August, 1905, which contained the following provision:

"This mortgage is given to further secure the said Samuel Strasbourger, or his legal representatives, for any indebtedness which now exists or may hereafter exist on the part of the said William F. Rohrig to him."

When this mortgage was executed, Rohrig was indebted to Strasbourger in the sum of $20,000, secured by the two $10,000 mortgages on the Madison avenue property as above stated. In October, 1906, the plaintiff commenced an action to foreclose a prior mortgage on the Park avenue property, which resulted in a sale of the premises to the appellant Monona Company. A surplus of $11,180.75 was realized from the sale, and the order appealed from, confirming the report of a referee, after providing for certain payments which are not contested on this appeal, directed that the balance, some $9,000, be paid to Strasbourger, whose claim was based upon his $10,000 mortgage on the premises sold. The appellants claim to. hold liens on this surplus superior to Strasbourger's, which presents the questions to be determined.

The claim of Goss and Kertscher is independent of that of the Monona Company, and will be first considered. At and prior to the time the agreement before mentioned was executed, several notices of mechanics' liens had been filed by different persons against both properties; many creditors then having uncompleted contracts for work and materials on the Madison avenue property. The agreement was made between Rohrig, party of the first part, Goss and Kertscher, trustees, parties of· the second part, Strasbourger, party of the third part, and certain creditors of Rohrig, parties of the fourth part. So far as the appellants Goss and Kertscher were concerned, the agreement provided that Strasbourger should make certain payments to the creditors in cash, and, to secure any advances he might make for the completion of the building on Madison avenue, Rohrig was to execute to him a mortgage thereon for $40,000, and also to execute to Goss and Kertscher, as trustees, a mortgage for $85,000, covering both properties; it being provided, however, that this mortgage should be "subsequent and subordinate to all advances so made by the party of the third part under his said mortgage of $40,000. * * *" These two mortgages were made and recorded on the 27th of November, 1905; the $40,000 mortgage being the one already referred to as

one of those which Strasbourger foreclosed. The appellants Goss and Kertscher contend that, although Strasbourger's $10,000 mortgage on the Park avenue property was to secure future as well as existing indebtedness, nevertheless under the agreement it did not cover the advances which he made pursuant thereto—in other words, the $10,000 mortgage on the Park avenue property can, by reason of the agreement, be held to secure only the $20,000 which Rohrig owed him at the time the agreement was executed; that, inasmuch as he received from the sale of the Madison avenue property over $31,000, this must be considered as applied to the payment of the mortgages on that property which he held in the order of their priority, and, if so applied, the mortgage of $10,000 on the Park avenue property is satisfied. This claim is well founded, if it be true that the $10,000 Park avenue mortgage was collateral only to either or both of the mortgages on the Madison avenue property. In that case the Park avenue mortgage is deemed satisfied, and Strasbourger has no lien on the surplus moneys involved in this proceeding, and the surplus should go to the appellants as trustees under the $85,000 trust mortgage.

The agreement, after reciting that Rohrig was the owner of the two parcels and the mortgages on each, described the Park avenue mortgage as—

"a third mortgage held by Samuel Strasbourger for the sum of $10,000, being a collateral mortgage to the mortgage for the same amount held by Strasbourger on premises southeast corner Ninety-Sixth street and Madison avenue."

It is contended that this recital estops Strasbourger from asserting that this mortgage also secured the advances he made under the agreement; but in the very first paragraph of the agreement it is stated that:

"It is understood that the mortgage to be given to said trustee shall be subordinate to all advances made or that may hereafter be made on the bonds and mortgages hereinbefore referred to."

In view of this express provision, I do not see how there can be any question but that Strasbourger's mortgage should be satisfied before anything is paid on the trust mortgage. The provision is all the more significant, because it was the only existing mortgage referred to in the agreement which made any provision whatever for future advances. At the hearing before the referee certain testimony was admitted tending to show that some time before the execution of the agreement Strasbourger had stated at a meeting of the creditors that the Park avenue mortgage was collateral to the last $10,000 mortgage on the Madison avenue property, and that when the two $10,000 mortgages thereon were paid this mortgage would be satisfied, and for that reason it was described as a collateral mortgage in the agreement. I do not think this testimony was admissible, as it was an attempt to vary the terms of a written instrument; but, assuming that it was, and giving to it all the force that can be claimed therefrom, it does not alter the situation. What Strasbourger said was true. The only indebtedness which it apparently secured at that time was the $20,000 loaned on the Madison avenue property and if

that had then been paid the mortgage would have been satisfied. It is quite likely that he was asked what the mortgage covered, and, if he stated what the testimony tended to show he did, his statement was in fact true. The statement, however, was made some time before the execution of the agreement, and, if made, does not warrant the conclusion that he waived the security of the mortgage for future advances, in view of the express provision to the contrary in the agreement itself. It is true there is no mention of this mortgage in the $85,000 trust mortgage, which is expressly stated to be subordinate to Strasbourger's $40,000 mortgage; but the trust mortgage makes no reference to any of the mortgages on the Park avenue property, so that this omission, signifies nothing. Strasbourger was not a party to the trust mortgage, and it could not in any event impair whatever rights he had. So far as it affects the question at all, it indicates an intention on the part of the parties to it that he was to be paid in full before anything went to the trustee.

It is also contended that, since no advances had been made when the trust mortgage was recorded, it is a superior lien to Strasbourger's mortgage in so far as the latter covered the subsequent advances. But the answer to this contention is the same as that to the one previously considered. Strasbourger's mortgage secured both present and future indebtedness. The agreement expressly provided that the trust mortgage should be subordinate to all advances that might thereafter be made on any of the mortgages referred to, among which was Strasbourger's, and, while it was described as a collateral mortgage, it was, as we have already seen, the only existing one under which future advances could be made. There can be no question, as is seems to me, that, so far as the appellants Goss and Kertscher are concerned, the order appealed from is right.

The appeal of the Monona Company presents a somewhat different question. Its claim is as assignee of Kertscher & Co. That firm had contracts with Rohrig under which it had furnished materials and performed work on the Park avenue property, and on October 7, 1905, had filed a notice of mechanic's lien against that property for $4,607. It also had contracts with Rohrig for furnishing materials for the Madison avenue property, and it was stipulated at the hearing before the referee that the balance due on these contracts on the day the agreement was executed, including the amount for which the lien had been filed, was $16,135. The agreement provided that Strasbourger should pay to the creditors certain specified sums in cash, and they were to receive certificates from the trustees under the $85,000 mortgage for the balance of their claims. Those who had not completed their contracts for work on the Madison avenue building agreed to complete the same, and were not to receive either the cash payment or the certificate of the trustees until that time. The agreement specified that Kertscher & Co. were to receive $6,135 in cash, and the balance of their claim, $10,000, for which a trustee's certificate was to be given, appears opposite their signature. The creditors agreed to cancel and discharge all their liens or claims against the

premises or the owner, and to file no further notices of liens, and not to commence any proceeding on any claim within one year—

"except that it is understood and agreed that the undersigned, Kertscher & Co., are not to satisfy their mechanic's lien for $4,607, filed * * * on the 7th day of October, 1905; * * * it being further understood and agreed, however, that said Kertscher Co. will not commence any proceeding to foreclose or otherwise enforce their said mechanic's lien for the period of one year from this date, and will at any time prior to the expiration of said time satisfy said lien on receipt of the sum of $2,000."

This lien was subsequently assigned to the Monona Company, under and by virtue of which it claims to be entitled to $4,607 of the surplus in question. It is conceded that Kertscher & Co. received, pursuant to the agreement, $6,135 in cash; but it is claimed that by its terms their lien was to be satisfied only upon payment of $2,000 additional. I do not think the agreement is susceptible of this construction. It is obvious that the main purpose of the agreement was to insure the completion of the Madison avenue apartment, and the creditors, with the exception of Kertscher & Co., agreed to cancel all their liens upon both properties, that this might be done. Kertscher & Co.'s claim amounted to $16,135, which included $4,607, for which they had filed a lien, and they were to receive $6,135 in cash and a trustees' certificate for $10,000. There is not a suggestion that a $2,000 bonus was to be given to them, and such an assumption is contrary to the spirit of the agreement. The obvious meaning of the provision that their lien was not to be canceled is that, whereas the other creditors were to cancel and satisfy their liens at once, on the strength of Strasbourger's promise to pay a certain amount in cash and a share in the trust mortgage for the balance of their claims, Kertscher & Co. were not to satisfy their lien until they had actually received $2,000. They had contracts aggregating a considerable amount for materials furnished or work performed on the Madison avenue property, which it can fairly be assumed they had not completed, although that fact does not definitely appear. By the terms of the agreement they would receive nothing until these contracts were completed, and the provision that they should not satisfy their lien until they received $2,000 is not difficult to understand. "On receipt of the sum of $2,000," taken in connection with the other provisions of the agreement, means on receipt of $2,000 of the $6,135 to be paid them by Strasbourger. There is no mention of any other payments to be made in cash, and no suggestion of an additional $2,000, in any part of the agreement. If the Monona Company's construction be adopted, then Kertscher & Co. received $6,135 in cash and a trustees' certificate for $10,000 for their claim of $16,135, which included the $4,607, for which notice of lien had been filed, and in addition still retained their lien, inasmuch as the $2,000 additional was not paid within the time specified in the agreement. In other words, Kertscher & Co. and its assignee would receive $20,742, when the admitted indebtedness was $16,135. The agreement was not intended to accomplish such result, nor is it accomplished by a fair and reasonable construction. When Strasbourger paid to Kertscher & Co. the amount provided in the agreement, $6,135, this satisfied their lien

for $4,607, and the assignment to the Monona Company accomplished nothing, and its claim is without foundation.

The order appealed from, therefore, should be affirmed, with $10 costs and disbursements against the appellants.

INGRAHAM, CLARKE, and SCOTT, JJ., concur.

HOUGHTON, J. (dissenting). Notwithstanding the recital in the instrument itself that it shall be considered as security for future advances, the uncontradicted evidence shows that the $10,000 mortgage of Strasbourger on the Park avenue property was collateral to one or both of the $10,000 mortgages which he held on the Madison avenue property. The composition agreement which Strasbourger signed recites that it is only collateral to these mortgages, or one of them, and witnesses Goss and Baton testified that Strasbourger so admitted when the composition agreement was about to be entered into, and Strasbourger was not called to deny their statements, That the $10,000 mortgage on the Park avenue property was collateral, and was not intended to be security for any future advancements, is further evidenced by the fact that after the composition agreement was entered into Strasbourger took a $40,000 mortgage on the Madison avenue property for the purpose of securing any future advancements which he might make. Strasbourger received payment in full of both of the $10,000 mortgages which he held on the Madison avenue property. If the $10,000 mortgage on the Park avenue property was collateral only, then, of course, it is wiped out by payment in full of the Madison avenue mortgages. The holding of the referee that the $10,000 Park avenue mortgage was given to secure future advances was therefore unauthorized, and the allowing of Strasbourger to take any part of the surplus was error.

With respect to the Kertscher & Co. mechanic's lien of $4,607, the referee was also in error. The second paragraph of the composition agreement provided that this lien should stand unless within a year $2,000 should be paid, and upon such payment it should be satisfied. The fourth paragraph set forth the names and amounts to which various contractors and materialmen were entitled by reason of furnishing labor and material on the Madison avenue property, and it was agreed that Strasbourger should pay them the respective amounts. Among the persons to be so paid were Kertscher & Co., who were to be paid $6,135. To secure the payment thus to be made, Strasbourger was to be, and was, secured by a $40,000 mortgage, which was to be ahead of the mortgage to be given to the trustees for the benefit of all creditors. Kertscher & Co.'s full claim was $16,135, $6,135 of which was to be paid by Strasbourger as indicated, and the balance of $10,000 they took their chances of recovering under the general mortgage to be given to the trustees for the benefit of all creditors. Kertscher & Co. refused to satisfy their lien, as some of the other lienors consented to do, unless they were paid within one year the sum of $2,000. It does not matter that it was not specifically provided who might make the payment. The subsequent lienors could do so, and thereby save to themselves $2,607.

It is claimed that, because Strasbourger paid the $6,135 to Kertscher & Co. which he by another instrument agreed to pay, they did get $2,000, and that therefore they did within the year receive $2,000, and hence their lien of $4,607 was discharged. This to my mind is wholly unjustified. The agreement with respect to the payment of the $2,000 was an agreement for payment on account of that lien, not payment from some other source and on some other account, or on account of some other claim. It might as well be said, if they received $2,000 as a gift or from their general business, the lien was to be discharged. If the $4,607 is collected from the Park avenue property, then that amount should be deducted from the $10,000 provided for under the general trustee mortgage. It was uncertain what the Park avenue property was worth. Kertscher & Co. had a valid lien. They were not willing to satisfy it absolutely. If they were paid $2,000 on account of it within a year, they were willing to do so and take their chances on the trustee mortgage for the balance.

I think the order should be modified, by directing that the Kertscher & Co. claim, assigned to the Monona Company, of $4,607, with interest, be first paid, then the liens of the New York Wooden Flooring Company and Williams & Company, and the balance paid to the trustees on the mortgage given for the benefit of all creditors.